UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| VALERIE LASHON MARBLE,<br><br>    Plaintiff,<br><br>v.<br><br>RENTGROW, INC., TRANSUNION RENTAL SCREENING SOLUTIONS, INC.,<br><br>    Defendants. | Civil Action No.<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Valerie Marble ("Plaintiff"), by and through the undersigned counsel, hereby submits her Complaint and Demand for Jury Trial ("Complaint") against Defendants RentGrow, Inc. ("RentGrow") and Transunion Rental Screening Solutions, Inc. ("TURSS") (collectively, the "Defendants") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## JURISDICTION AND VENUE

1.  Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681.

2.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

1

3. Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at this District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff, Valerie Marble, is a natural person who resides in Pontiac, Michigan, within the confines of Oakland County, Michigan. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

5. Defendant, RentGrow, is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). RentGrow is incorporated in Delaware, and its principal place of business is located at 307 Waverly Oaks Road, Suite 301, Waltham, Massachusetts 02452. RentGrow can be served through its registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

6. Defendant, TURSS, is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). TURSS is incorporated in Delaware, and its principal place of business is located at 5889 South Greenwood Plaza, Suite 201, Greenwood Village, Colorado 80111. TURSS can be served through its registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

7. At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

9. As will be detailed in this Complaint, Plaintiff has sustained damages as a result of inaccurate consumer reporting at the hands of the Defendants.

10. In February 2022, Plaintiff's apartment lease was expiring. Having enjoyed living there the previous three (3) years, she intended to renew her lease.

11. Unfortunately, Plaintiff learned from her landlord that the property management company would not be renewing her lease.

12. Accordingly, Plaintiff began looking for a new place to live.

13. Over the next several weeks, Plaintiff expended substantial effort in trying to find her new home. She hoped to find a location close to her family and her work, and either within the city of Pontiac, Michigan, or very close to it.

14. Plaintiff's current landlord called her nearly every day, urging Plaintiff to move out as quickly as possible so that they could re-rent her apartment.

15. In or around April 2022, Plaintiff identified a suitable location, and completed a rental application with non-party Rivers Edge Apartments ("Rivers Edge").

16. As part of the application process, she was required to consent to a background check and pay a non-refundable application fee of $50.

17. On or about April 14, 2022, Plaintiff consented to a background check prepared by RentGrow and provided RentGrow with her personal information.

18. On or about the same day, Plaintiff heard back from Rivers Edge, information her that her rental application had been denied.

19. Plaintiff was extremely frustrated and confused by the denial. She had a positive rental history and had not expected any issues with her application.

20. Regardless, Plaintiff continued her search for housing, as her current landlord continued to pressure her to move, causing Plaintiff serious anxiety.

21. On or about April 21, 2022, Plaintiff completed a rental application with non-party Riverstone Apartments ("Riverstone").

22. As part of the application process, Plaintiff was again required to consent to a background check and pay a non-refundable application fee of $60.

23. On or about April 21, 2022, Plaintiff consented to a second background check prepared by RentGrow and again provided RentGrow with her personal information.

4

24. The following day, on or about April 22, 2022, Plaintiff received a letter from Rivers Edge informing her why her first application was denied.

25. The letter stated, in relevant part, "Although we are solely responsible for our rental decision, it was based in whole or in part on information contained in a tenant screening report provided to us by: RentGrow, Inc."

26. Under a section of the letter reading "Your individual result was affected by," Plaintiff saw the harrowing words: "Criminal History Does Not Meet Property Requirements."

27. Plaintiff's heart sank as a wave of realization washed over her.

28. In 2021, Plaintiff was involved in a personal dispute with a family member, which led to her arrest and a felony criminal charge for the alleged offense of assault (Case No. 210745FY).

29. Plaintiff was a victim of circumstance and maintained her innocence. However, rather than expend substantial time, energy, and money in a protracted legal battle, Plaintiff ultimately agreed to a plea deal in order to quickly move on.

30. In or around June 2021, Plaintiff's plea agreement was entered. Plaintiff agreed to plead guilty to the lesser offense of misdemeanor domestic violence, and in exchange for Plaintiff's completion of six (6) months of probation, the case – including the records of arrest and dismissal – would be "set aside, dismissed,

removed from the public record, and retained only as a nonpublic record" according to Michigan law.

31. Plaintiff dutifully completed her probation, and as agreed, in December 2021, her criminal record was set aside, dismissed, removed from the public record, and retained only as a nonpublic record.

32. Plaintiff hoped to simply put this experience behind her and move on. She took comfort in knowing the record had been set aside, meaning it would not appear on background checks.

33. Accordingly, Plaintiff was understandably distraught when she had the realization RentGrow had apparently reported criminal record information about her.

34. Plaintiff was in a panic and very upset when she read the letter from Rivers Edge. She was seriously concerned that RentGrow was reporting the criminal record which she had worked diligently to have set aside.

35. Plaintiff contacted RentGrow and requested a copy of the report it had prepared about her.

36. Upon receiving the RentGrow report, Plaintiff was devastated to learn that RentGrow was indeed reporting details concerning Case No. 210745FY.

37. Moreover, Plaintiff immediately identified multiple inaccuracies in the criminal record information RentGrow was reporting about her.

38. First, RentGrow's reporting of Case No. 210745FY in **any way whatsoever** was inaccurate. Plaintiff had worked hard for the express purpose of having this record set aside, dismissed, and removed from the public record. Accordingly, the mere mention of this record in a consumer report was inaccurate.

39. Second, RentGrow's reporting of Case No. 210745FY included only the original offense, "ASSAULT WITH A DANGEROUS WEAPON (FELONIOUS ASSAULT)," which was also inaccurate. Pursuant to the terms of her plea agreement, Plaintiff pled guilty to a charge of domestic violence, rather than the far more severe offense RentGrow was reporting. Notably absent from RentGrow's reporting was any reference at all to the charge of domestic violence.

40. Third, RentGrow's reporting of Case No. 210745FY included the letter "F" in a field labeled "Offense Degree." Upon information and belief, this "F" stands for "felony." Again, this was inaccurate, as the offense Plaintiff pled guilty to was a misdemeanor. Notably absent from RentGrow's reporting was any reference at all to the word "misdemeanor."

41. Fourth, and finally, RentGrow's reporting of Case No. 210745FY included the word "PENDING" in a field labeled "Disposition." Again, this was inaccurate, as Plaintiff's case was not pending at all. Rather, Plaintiff's plea agreement was entered in June 2021, and the case was then set aside, dismissed, and removed from the public record in December 2021.

42. In other words, beyond the inaccuracy of RentGrow even mentioning Case No. 210745FY, RentGrow had wrongly communicated to Plaintiff's prospective landlord that Plaintiff was a violent felon awaiting adjudication.

43. Upon information and belief, landlords are less likely to approve rental applications when a prospective tenant's background check reports a violent felony.

44. Upon information and belief, the existence of the word "felony" on many background checks is a *de facto* disqualifier.

45. Upon information and belief, landlords who learn a prospective tenant has a pending felony record may also have concerns the tenant will soon be incarcerated, conveying a risk that the tenant may soon stop paying rent.

46. Therefore, upon information and belief, Plaintiff's rental application with Rivers Edge was denied as a direct result of RentGrow's inaccurate reporting of Plaintiff's criminal record.

47. Plaintiff was humiliated as she realized her prospective landlord now knew about her criminal record. She had agreed to her plea deal in part because of the substantial benefit provided by having her criminal record set aside – namely, third parties like prospective landlords would never learn of the record.

48. Distraught, Plaintiff contacted RentGrow to dispute its inaccurate reporting on or about April 22, 2022.

49. She notified RentGrow the criminal record information it was reporting about her was inaccurate and should be removed from her consumer report.

50. Upon information and belief, RentGrow made a note on or about April 22, 2022, detailing Plaintiff's dispute of RentGrow's inaccurate reporting.

51. At the time of her dispute, Plaintiff had not yet heard back from Riverstone concerning her rental application. She assumed her dispute would obviate any risk of RentGrow reporting what it now knew was inaccurate criminal information concerning Plaintiff to Riverstone.

52. Sadly, on or about April 25, 2022, Plaintiff learned her rental application with Riverstone had been denied, again due to information RentGrow had reported in her background check.

53. Plaintiff was furious and contacted RentGrow again to request a copy of the background check it had prepared about her for Riverstone.

54. On or about April 28, 2022, RentGrow sent Plaintiff a copy of the background check it had prepared about her for Riverstone.

55. Plaintiff reviewed this second report and learned RentGrow was reporting the very same inaccurate criminal record information Plaintiff disputed one week prior.

56. Furthermore, under a field labeled "COMPLETED DATE," this second report indicated the "Criminal Search" – the section of RentGrow's report which reported the inaccurate criminal record – was completed on April 25, 2022.

57. In other words, three (3) days **after** RentGrow received notice it was reporting inaccurate criminal record information about Plaintiff, RentGrow reported the same disputed information in the consumer report it prepared for Riverstone.

58. Plaintiff was at a loss. Her need to find new housing remained dire, exacerbated by the fact her landlord continued to call her daily.

59. Plaintiff wanted to submit additional rental applications, but after learning RentGrow had reported inaccurate criminal information about her in a second consumer report, she held legitimate fears her subsequent applications would similarly be denied.

60. Accordingly, Plaintiff refrained from subsequent applications pending the results of her dispute with RentGrow.

61. The following week, on or about May 3, 2022, Plaintiff received a response to her dispute from RentGrow.

62. RentGrow notified Plaintiff the criminal record information it had reported about her was obtained from a consumer report prepared by TURSS.

63. RentGrow further notified Plaintiff that after forwarding Plaintiff's dispute to TURSS, TURSS deleted the inaccurate record from its files, and RentGrow had updated Plaintiff's consumer reports to remove the record.

64. Both RentGrow and TURSS clearly understood they had reported inaccurate information concerning Plaintiff, by virtue of the fact they deleted the information after being notified of its inaccuracy.

65. Unfortunately for Plaintiff, damage at the hands of RentGrow and TURSS had already been done. Her name had been permanently besmirched in the eyes of at Rivers Edge and Riverstone, who would always know Plaintiff had been charged with a felony, despite Plaintiff's utilization of mechanisms in Michigan meant to prevent this very outcome.

66. Upon information and belief, TURSS reports criminal information in consumer reports using automated, database-driven processes, rather than direct, manual searches of relevant public records.

67. Upon information and belief, information generated via automated, database-driven processes like those employed by TURSS, is often fraught with inaccurate or out-of-date information.

68. This allegation is supported by the fact that when TURSS reported criminal record information concerning Plaintiff in April 2022, the information it reported was out-of-date by approximately one (1) year.

69. To that end, Case No. 210745FY was originally disposed in June 2021, when Plaintiff pled guilty to a misdemeanor offense. Therefore, the information inaccurately reported by TURSS reflects information which existed in the public record before June 2021.

70. Upon information and belief, it is unreasonable for a consumer reporting agency to rely solely on database records in reporting "pending" criminal cases, as these cases by definition change when they are disposed.

71. Upon information and belief, it is unreasonable for a consumer reporting agency to report criminal record information about a consumer which reflects a "snapshot in time" of one (1) year prior without updating said record.

72. Upon information and belief, it is unreasonable for a consumer reporting agency to maintain procedures which allow for continued inaccurate reporting of consumer information until and unless a consumer disputes the inaccurate reporting.

73. Upon information and belief, TURSS profits by, *inter alia*, preparing consumer reports to sell to reseller consumer reporting agencies, like RentGrow.

74. Upon information and belief, both RentGrow and TURSS are aware the consumer reports prepared by TURSS and resold by RentGrow are used by end users like Rivers Edge and Riverstone to make significant consumer decisions concerning housing.

75. Upon information and belief, both RentGrow and TURSS are aware their unreasonable procedures frequently result in reporting inaccurate information.

76. Upon information and belief, both RentGrow and TURSS are frequent litigants as a direct consequence of their unreasonable procedures.

77. Regardless, upon information and belief, both RentGrow and TURSS each continue to rely on their unreasonable procedures due to the high degree of profitability associated with such procedures.

78. Therefore, upon information and belief, both RentGrow and TURSS fail to maintain and employ reasonable procedures to assure maximal accuracy of the consumer reports and consumer information they sell to third parties as required by the FCRA.

79. Following RentGrow's response to Plaintiff's dispute, Plaintiff submitted a rental application to Town Square Apartments ("Town Square") in Detroit, Michigan.

80. Candidly, Plaintiff did not want to live in Detroit, and preferred to remain closer to Pontiac. However, she felt the proverbial "well" had been poisoned with respect to her preferred choices, Rivers Edge and Riverstone.

81. Moreover, given the serious urgency Plaintiff felt to move, she was anxious to simply take whatever housing she could get as quickly as possible.

82. As expected, Plaintiff's application to Town Square was approved.

83. While Plaintiff was relieved to finally have her housing situation resolved, she was admittedly disappointed with the location of her new home. Moreover, the apartments at Rivers Edge and Riverstone provided substantially better amenities and accommodations, which Plaintiff had lost out on.

84. Throughout this ordeal, Plaintiff suffered severe emotional distress. She constantly felt frustrated by her plight, and she had persistent feelings of anxiousness, depression, and sadness.

85. After learning of the inaccurate reporting of RentGrow and TURSS, Plaintiff developed fears of what might occur if her employer randomly ran a background check, particularly one prepared by either RentGrow or TURSS.

86. Plaintiff already struggles to sleep at night, but her difficulties sleeping were exacerbated by the circumstances caused by the inaccurate reporting of RentGrow and TURSS, as her mind raced at night pending the outcome.

87. Plaintiff felt as though she was being targeted and labeled as a "criminal" by RentGrow and TURSS. The crime she was charged with in 2021 was an unfortunate incident wherein Plaintiff had done nothing wrong but was punished nonetheless. She felt as though she was being punished once again for something she had not done – this time, by RentGrow and TURSS.

88. As a direct result of each Defendant's conduct, action, and inaction, Plaintiff has suffered actual damages, including but not limited to: damage to

reputation, emotional distress, loss of housing opportunities, anxiety, frustration, anger, fear, embarrassment, humiliation, sleepless nights, and wasted time.

## COUNT I
### Defendants' Violations of 15 U.S.C. § 1681e(b)

89. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

90. The FCRA requires consumer reporting agencies, like Defendants, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. 15 U.S.C. § 1681e(b).

91. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

92. Upon information and belief, Defendants have been sued or received disputes from other consumers in the past who have alleged their procedures were unreasonable and violative of the FCRA.

93. Therefore, Defendants had actual notice of their deficient procedures.

94. In this case, however, Defendants received actual notice that their procedures were unreasonable as applied to Plaintiff.

95. It is wholly unreasonable to report criminal information which has been set aside and removed from the public record.

96. Specifically, it was wholly unreasonable for Defendants to report a criminal record in consumer reports concerning Plaintiff when the record had been set aside, dismissed, and removed from the public record in December 2021.

97. As a result of Defendants' failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

98. Defendants' violations of 15 U.S.C. § 1681e(b) were willful. Therefore, Defendants are each individually liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

99. Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, Defendants are each individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

100. In any event, Defendants are each individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

101. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Valerie Marble, respectfully requests judgment be entered against Defendants RentGrow and TURSS, for the following:

  A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

  B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

  C. Punitive damages pursuant to 15 U.S.C. § 1681n;

  D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and

  E. All pre-judgment and post-judgment interest as may be allowed under the law; and

  F. Any other and further relief as the Court may deem just and proper.

Dated: May 9, 2022,

      By: */s/ David A. Chami*
      David A. Chami, AZ No. 027585
      THE CONSUMER JUSTICE LAW FIRM
      8245 N. 85th Way
      Scottsdale, AZ 85258
      T: (480) 626-2359
      E: dchami@cjl.law
      *Attorney for Plaintiff*
      Valerie Lashon Marble